The Honorable John Dawson State Representative P.O. Box 336 Camden, Arkansas 71701-0336
Dear Representative Dawson:
This is in response to your request for an opinion on the retirement benefits payable under a "Model Qualified Domestic Relations Order" for active members of the Teachers Retirement System. You have enclosed such an order with your request, and note that A.C.A. §§ 9-18-101 to -103 authorize chancery courts to enter such orders, requiring certain state-supported retirement systems to make payments to "alternate payees." Typically, this allows a chancery court, in dividing marital property upon divorce, to enter an order requiring a state-supported retirement system to make payments directly to a divorced spouse of an active or retired member.
Your question is whether an alternate payee would "receive any benefit from cost of living increases or any other benefit increases applied after the effective date of the divorce."
In this regard, the Model Order you have enclosed provides blank spaces for the court to fill in one of three alternative methods (either a percentage or a dollar amount of benefits) to be paid to the alternate payee. Each alternative is computed as of the date of divorce. Another provision of the Model Order, however, states that:
 The benefit enhancements provided by the Arkansas legislature for service during the marital relationship which are adopted after the end of the marital relationship apply to the alternate payee's portion of benefits under this Order.
Model Order Section VI (D).
I addressed a similar provision in early 1995, regarding the Model Order for the Arkansas Public Employees Retirement System. In Op. Att'y Gen.94-342 (copy enclosed) questions were posed as to whether an "alternate payee" was entitled to the added benefits occasioned by increases in the member's salary received after the date of divorce, and/or whether a "cost of living adjustment" passed by the Arkansas legislature was the type of "benefit enhancement" referred to in the Order. I answered the first question in the negative and the second in the affirmative. That is, under a Model QDRO, such as the one you have enclosed, an "alternate payee" is not entitled to the additional benefits which arise from a spouse's salary increases after divorce,[1] but is entitled to any legislatively provided cost of living or other "benefit enhancements" which have the effect of raising the benefits for the period of service which occurred during the marriage.
Thus, in answer to your question of whether an alternate payee will receive any benefit from cost of living increases or any "other benefit increases," the answer depends upon whether they are legislatively provided and enhance the benefits payable for service during the marital relationship. If so, under a QDRO, the alternate payee will be entitled to share in the increased benefits.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] In the private sector, the question of whether a spouse is entitled to the additional benefits arising from post-divorce salary increases is within the discretion of the chancery judge. See Brown v. Brown,332 Ark. 235, ___ S.W.2d ___ (1998). It is also within the discretion of a chancellor as regards public employment, but where a QDRO is utilized to authorize direct payment to a retiree's ex-spouse, the provisions of the QDRO will govern.